[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a dissolution of marriage focused on custodial issues involving Kenneth Stephen Lane, born March 20, 1988 and twins, Brandon Kyle Lane and Courtney Elizabeth Lane, both born May 17, 1991. Both parents proceeded pro se throughout the twelve day trial.
The parties were married on September 5, 1987, in Bridgeport, Connecticut. Both have been residents of the State of Connecticut CT Page 7529 for at least twelve months preceding the filing of the complaint. The marriage has broken down irretrievably. No other minor child has been born to the plaintiff mother since the date of the marriage. No one in the family has received public assistance.
Mrs. Lane is harsh and strident. Claiming naivete, she uses her pro se position to interrupt repeatedly, harass opposing witnesses and guide friendly ones. As a witness, she errs consistently, exaggerates repeatedly and lacks credibility. She claimed her steadily employed husband drank 24 cans of beer daily for three years. She denied her own use of alcohol, but stopped personally patronizing her local package store only when her husband included the manager on his witness list for this trial. She is calculatingly confrontational and intimidating. After Mrs. Lane made a scene at school when Mr. Lane visited Kenneth's class, the school asked Mr. Lane to stay away from the school to avoid further confrontations with Mrs. Lane. The family relations supervisor expressed appreciation that she had not treated him as badly as he had anticipated.
She appears to cherish Kenneth's role as "my special needs child," repeating that description at every opportunity, wearing it as a shield and employing it as a sword. She allowed Courtney to be absent from school 35 times this past year, Kenneth 29 times. She refers to both Courtney and Kenneth as "asthmatics." Their pediatrician, Dr. Jan Fugal, did not agree. She reports that Kenneth almost died of pneumonia. Dr. Fugal told the court that at no time was Kenneth's life in danger. She repeatedly and ominously accused father of threatening the children's lives by exposing them to "spinal" meningitis. Dr. Fugal, the children's pediatrician, testified the issue was "viral" meningitis, and, no, it was not serious.
In her zeal to protect her own role with the children, Regina Lane appears committed to denying them the benefits of a father. Visitations have diminished over time, occurring primarily when specific court orders were entered or when court supervision was imminent. She has maneuvered Kenneth and Courtney into rejecting their father — and the pressure on young Brandon to join the assault may soon be more than he can handle. He may well join the other two and complete the rejection of their father.
The court is disturbed by an undercurrent, that often rises to flood stage in cases as adversarial as this one, that father somehow, in some way, may have been physically inappropriate with CT Page 7530 Courtney. The court rejects the innuendos and finds no credible evidence that such incidents occurred.
Defendant father, Kenneth Lane, is softspoken and credible. He has survived this union by stepping aside. As a result, he has lost touch with some of the day-to-day needs of the children. But, as Lisa Richard, the Family Relations Officer, observed, ". . . during the marriage the father cared for the children in the evening while the mother worked. There has been no information provided during this evaluation which indicates that the father is unable to provide adequate care and protection to the children."
Regina Lane is implacably focused on her "special needs child," Kenneth, and his twin siblings. Anyone who is perceived as threatening her maternal bond must be removed. Father, and his entire family, are seen to represent such a threat. Two Superior Court judges represented such a threat. All have been successfully removed. The unverified claims against the Rossi family, father's sister and husband, and their children, are remarkable for their creativity and their wide range.
She refuses to accept court adjudications as conclusions of her claims, raising them again and again after a court rejects her position.
Plaintiff presents as unemployed. She ceased working simultaneously with the initiation of this divorce, announcing on September 4, 1995 that she would quit and that her husband would have to pay for everything from that day forward. She has not worked since. Her parents provide. Her history shows sustained employment at the counters of donut shops and as a pastry chef. She has an earning capacity of $7500 a year part-time serving donuts and $30,000 and more as a pastry chef. She testified to "good health." She claimed the need to wear orthopedic shoes, but was seen to wear sling back flats and conventional shoes throughout the trial, during which she stood and walked often. She claimed a spinal injury but offered no credible medical evidence of physical limitations nor did she exhibit any throughout the twelve days of trial. Her exaggerations when detailing the children's health did not generate confidence in her report of her own medical condition.
Plaintiff mother's sworn financial affidavit is not reliable. She claims weekly expenses of $196 a week for rent and $66 a week CT Page 7531 for real estate taxes, both of which she and her father agree are not paid by her but by him. Those two items total $13,624 a year and represent 38% of the expenses listed on her affidavit.
Regina Lane's father, Stephen J. Link, testified he gave his daughter an average of two hundred dollars a week throughout the marriage, an amount he reports as being a "conservative" estimate, in addition to substantial impulsive payments of as much as a thousand dollars for such things as clothing and home repairs. Though plaintiff referred to moneys from her parents as loans, and listed a $27,000 loan from them on her sworn financial affidavit, and assured the court that instruments of debt would be produced by her father as evidence of those loans, no such notes were produced, though her father did testify. Apparently, this pattern of contributions by plaintiff's family introduces the possibility of mother's future acquisition of capital assets as well as income from that family. No expectancy is found, but a cautious and tentative view cannot help but note the consistent generosity of plaintiff's parents who, in addition to weekly sums, also provided gifts that included groupings of furniture, Christmas bonuses, security deposits, consigned notes and three automobiles.
Based upon her acerbic style, her pattern of insults, her husband's early discovery of her lack of credibility regarding her claims of deafness and the use of birth control, which resulted in an unplanned pregnancy and a "reluctant" marriage, and her rude and abusive behavior towards his family, friends and neighbors, the court finds plaintiff mother to be the cause of the breakdown of the marriage.
Mrs. Lane's angry assaults are mirrored by her parent's testimony. The most remarkable parental testimony being that of Stephen Link, who, after testifying to his mental health training, offered a video tape of a carefully rehearsed and baldly controlled interview with the three Lane children, who were forcibly lead through a parade of statements deprecatory of their father. It was a painful display. His wife, Regina Link, who also claimed professional expertise in mental health, submitted at least one check with testimony pointing to the wording on its face: "car loan to Ken" as evidence of that fact. It was later demonstrated to the court's satisfaction that those words were written on the check after it cleared.
Plaintiff mother's manipulation of the children and her CT Page 7532 demonstrated lack of credibility, combined with her animosity and disdain for the children's father, has been recognized by the Family Services Officers evaluating this case, as well as by Attorney Louis Parley, Counsel for the Minor Children. Counsel for the Minor Children conceded that Mrs. Lane was abrasive and abusive. She interfered with father's visitation. She exaggerated the children's illnesses. Lisa Richard, one Family Relations Officer, recommended that Mrs. Lane undergo psychiatric evaluation and treatments. She noted that Mrs. Lane was prone to exaggeration and that Mr. Lane's complaints regarding mother's interfering in his relationship with the children have merit. She noted further that mother's refusal to cooperate with the evaluation by repeatedly refusing to sign a release of psychological information was troublesome. She stressed that the children need a normalized relationship with their father and emphasized that Mrs. Lane has inappropriately embroiled the children in this divorce case. Yet each of them, Parley and Richard, as well as Allen Rubin, supervisor of and successor to Lisa Richard in this case, opted to maintain mother's custodial role, though stressing that the children needed therapy, that mother needs psychiatric evaluation and treatment and that the children needed a relationship with their father. Each evaluator concluded that the children were best served by maintaining mother's custodial role.
This court views mother as a danger to the best interests of the three children if her conduct does not change. The relentless attack, by mother and her parents, on the father of these children, and his family, if it is continued, is likely to do lasting damage to the young Lanes.
The court has not had the benefit of meeting the children. Both the Family Relations Officers and Counsel for the Minor Children have. And all of them bring many years of respected expertise to their roles. In the current circumstances this court will cautiously heed their recommendations.
In addition, this court is unable to provide the children with the professional protection and the assistance of ongoing post-dissolution evaluation that it feels should be required if it rejects the custodial recommendations of the Family Relations Officers and the Counsel for the Minor Children. Savage v.Savage, 25 Conn. App. 693, at 700:
Once a case has been disposed of by the rendition of a final CT Page 7533 judgment and there is nothing further pending, there is no longer a reason for ordering an ongoing evaluation.
If our appellate system will not permit a trial court to monitor the progress of the young wards entrusted to it, the court will sometimes be compelled to retreat into inaction, even where, as here, the inaction may reflect on the children's best interests.
Therefore, having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, a finding shall enter that the marriage has broken down irretrievably, a dissolution shall enter and the following orders shall apply:
ORDERS:
1. Dissolution
Dissolution shall enter on the grounds of irretrievable breakdown.
2. Custody
a. Plaintiff shall have custody of the minor children of the parties, subject to the Defendant father's reasonable rights of access, which shall include, but not be limited to the access detailed in paragraph 3, below.
b. Plaintiff mother shall consult with defendant father regarding all non-emergency health care, sending any of the children to a school other than the public school the child would attend in the ordinary course, or changing the religion observed by any of the children.
c. In any such events, plaintiff mother shall notify defendant father of her intention to do so in writing and in a timely manner so as to enable him to obtain relevant information and to consult with third parties.
d. If a child is in need of emergency medical services, the parent in whose care the child is at the time may obtain those services and shall make the matter known to the other parent without delay. CT Page 7534
e. The parties will keep each other fully informed about the children's progress in school, social and athletic activities and all similar matters concerning the children. Plaintiff shall keep defendant informed of each child's general health, including any health care and all of the information resulting from such health care or regular check ups.
f. In accordance with Section 46b-56 (e) of the Connecticut General Statutes, defendant father shall have full and complete access to all records, memoranda and any other communications emanating from all persons concerned with the health, welfare, maintenance and education of the children and shall be entitled to confer with any such individuals. To the extent that any authorization from the plaintiff is required before a third party will communicate with the defendant, plaintiff shall immediately furnish any written or oral authorization as defendant father shall request.
3. Father's Access
a. Father shall have access to his three children, Kenneth, Courtney and Brandon, every Tuesday and Thursday from 4pm to 7pm, without supervision of any kind. Pick-up and return shall take place at the McDonald's in Devon.
b. On Saturdays from noon (or after mid-day swimming) until 7pm, father shall have access to all three of his children without supervision of any kind. Pickup and drop off shall take place at swimming or at McDonald's. Beginning Saturday, October 4, 1997, at noon, father's Saturday access with all three of his children shall expand to alternate weekends, from Saturday at 9 am to Sunday at 7 pm.
c. Father and children are fully empowered to change:
i. the place of pick up or delivery, or
ii. the place, or places, where the access shall occur, or
in. their activities during access,
from time to time as they prefer. Mother shall not participate in those decisions. If she wishes her opinions to be considered, she is limited to written communication with father. CT Page 7535
d. Father is empowered to vary the children with whom he chooses to have access during the dates and times set forth.
e. In the event of any dispute regarding any of the details of father's access, other than dates and times as set forth herein, father's decision shall be final, though he is to discuss the issue with the children and give consideration to mother's written comments, if any there be.
f. Neither plaintiff mother nor her family are to offer, encourage or support any activities or programs that would compete in any way with father's access. Father's access as set forth herein shall take precedence over all other plans or arrangements involving the children.
g. Plaintiff mother may not use the children's apparent refusal to participate in their father's access as a basis for non-cooperation. Because mother has repeatedly shown evidence of her control of the children, and because the children have historically enjoyed their time with their father once they experience time with their father, no refusal to participate is to be regarded as the exercise of free will by the children.
h. The illness of any child may become the basis for missing an access period only upon advanced presentation of a dated, signed note from a medical doctor specifying the illness and the period of absence required. Father is found by this court to be fully capable of providing the children with normal care during minor illness. Mother is directed to advise father of all treatment modalities and to provide all the medication required during his access.
i. The parties shall each have reasonable access to the children while they are with the other parent, by mail and telephone, during reasonable hours of the day and early evening.
4. Modification
a. Should either party seek modification of custody and/or visitation, it is this court's hope that the trial court would apply the following criteria, among others, when considering whether to modify:
i. Mother has pledged to this court that she would enter counseling. Without such a maternal commitment, given the facts CT Page 7536 found in this case, the court would not have awarded mother custody. Her serious and consistent participation, her resultant changed behavior, her commitment to further change and the independence and high professional quality of the practitioner she hires are all particularly meaningful.
ii. Mother has pledged to this court that, for one hour each week, all three of the children would enter counseling in various groupings as Dr. Alan M. Shulik would, from time to time, recommend. In the past, the three children were not counseled as a sibling group, but were isolated from each other. Without such a maternal commitment, given the facts in this case, the court would not have awarded mother custody. Counsel for the Minor Children is requested to provide the doctor with a copy of this decision and the evaluation of Family Relations Officer Richard.
iii. If the children resist father's access, the cause of that refusal is likely to have been a continuation of mother's historic refusal to cooperate with the visitation orders of the court. The court has found that she is in control of such matters.
iv. Whether mother and her family have ceased to condemn father and his family, have begun to show a new and extended pattern of respect for father and his family and have ceased all unproven accusations.
5. Counsel for the Minor Children
Counsel has agreed that his appearance may be extended by this court to the first anniversary date of this decree. The court gratefully accepts Attorney Parley's generous offer. The extension is to include any modification attempt initiated by the parties within that first year. Thereafter, Attorney Parley's appearance shall be deemed withdrawn — with the profound appreciation of the court for his high professional skills and soothing behavior during this most trying experience.
6. Guardian Ad Litem
a. Attorney John Kelley, P.O. Box 9650, of New Haven, Connecticut, 06536-9650, is appointed Guardian Ad Litem to represent the best interests of the Lane children.
b. The court requests Attorney Parley to provide the Guardian CT Page 7537 with a copy of this decision and the evaluation of Officer Richard.
7. Child Support
a. In accordance with the Child Support Guidelines, defendant father shall pay plaintiff mother $278 per week as child support. Father's weekly net income is $654. The court calculates mother as employable at sufficient income to generate a net weekly income of $150. Her income is expected to increase with the passage of time as she pursues more remunerative forms of employment, at which time the support payments may be modified.
b. A wage withholding order shall be issued to secure payments of these sums.
8. Alimony
a. Defendant shall pay plaintiff $100 per week as alimony for a period of five years, during which time plaintiff will have an ample opportunity to reestablish herself in the work force, rebuild her pastry skills or develop new employability through training or courses at local schools.
b. In arriving at this sum, the court has considered defendant father's income, mother's earning history and earning potential, fault, and the division of family assets.
c. The alimony payments are non-modifiable as to both term and amount except in the event of defendant's medically substantiated inability to pursue full-time employment, in which event either the term or the amount, or both, may be lessened.
d. A wage withholding order shall be issued to secure payments of these sums.
9. Income Taxes
In the event of any claim by any taxing authority for taxes, interest, penalties, fines, deficiencies, losses, expenses or other claim arising out of any joint income tax return filed by the parties, the party whose income or claimed deduction is the cause of or the basis for any such claim shall bear the cost and expense thereof and pay such obligation and shall indemnify and hold harmless the other party from any liability therefor. CT Page 7538
10. Medical Insurance and Expenses
a. Defendant shall maintain the children as covered dependents on any health care insurance provided by his employer. If the employer offers optional forms of coverage, defendant shall select the option that provides the most comprehensive range of coverage, including dental coverage, and shall pay any additional charges imposed in order to obtain such coverage. Defendant shall provide plaintiff with information identifying the policy in effect within 30 days.
b. The provisions of Section 46b-84 (d) of the Connecticut General Statutes shall apply to the processing of claims for insurance coverage.
c. Each of the parties shall be liable for one-half (50%) of all unreimbursed health care costs incurred within the medical insurance plan purchased by father for the minor children. The party seeking repayment of any such sums paid, or a contribution toward any such sums due, shall submit the request for payment, which shall include a copy of the relevant bills and any notices of nonpayment from the health insurer, within 30 days of payment or receipt of the bill on account of which contribution is sought. The other party shall make the required payment within 30 days of the receipt of the request for payment or contribution.
d. Medical costs incurred for treatment outside the insurance plan shall be borne by the parent authorizing said treatment. If both parties agree, by giving prior written authorization, to any treatment outside the insurance plan, costs for such agreed treatment will be shared equally.
e. At this time the children are in counseling with Alan M. Shulik, Ph.D., who is not covered by the health care plan purchased by father. As long as the children continue to be treated by Dr. Shulik, defendant shall be responsible for the payment of one-half (50%) of the costs of Shulik's therapy for any of the children. This is a singular exception to the rule established in section 10, c and d, above.
f. Plaintiff shall maintain each child in therapy as long as Dr. Shulik recommends.
g. If plaintiff wishes to continue to be covered as an CT Page 7539 insured person under the health insurance plan provided by defendant's employer, she shall pay the premiums therefor. Should plaintiff so elect and notify defendant in writing thereof, defendant shall give notice to his employer of the entry of this decree of divorce within 10 days hereof and shall inform the employer of plaintiff's intention to remain covered, and provide the employer with plaintiff's address. This provision is intended to enable plaintiff to obtain health insurance coverage consistent with "COBRA" and Section 38a-538 of the Connecticut General Statutes.
11. Life and Other Insurance
a. Defendant shall maintain the maximum amount of life insurance available to him through his employment, with the children designated as the primary beneficiaries, in equal amounts, and shall not remove any child as a beneficiary until the child's majority. Upon returning to employment, plaintiff shall also maintain such life insurance.
b. Within 30 days of this decree, and within 30 days of her employment offering such life insurance, each party shall provide the other with proof that all of the necessary designations and any other policy changes have been made.
12. Property Division and Debts
a. Personal property has been equitably divided between the parties. Each party shall own free of any claim by the other, all personal property of every kind now in his or her possession.
b. Each party shall be responsible for payment of those debts listed on their own financial affidavit. Mother's is that affidavit dated June 10, 1997. Father's is that affidavit dated June 10, 1997.
c. In addition to those debts listed by father, he is to make payments as follows:
 Milford Mental Health Clinic $330.00 Dr. Alan Shulik $450.00 To mother: for Kenneth's eyeglasses $ 89.00 for prescriptions from Oct. 29, 1995 to June 1997 $ 37.90 CT Page 7540
Said payments are all to be made in full within 6 months hereof.
13. Pension.
a. Plaintiff mother is to receive one-half of so much of defendant father's pension with Miles Corporation/Bayer Corporation as represents those marital years from September 5, 1987 to the date hereof, when defendant father was an employee thereof and a participant in the pension plan.
b. Defendant father is to provide a Qualified Domestic Relations Order to effectuate said transfer.
14. Execution of Implementing Documents
a. Each party will at any time, on request by the other, execute any and all documents submitted to them for the purpose of giving full effect to this decree, particularly including documents related to the orders regarding health insurance, life insurance and the division of property interests.
15. Appeal
All the foregoing orders shall stand and operate as interim orders of this court during the pendency of any appeal.
Judge Joseph L. Steinberg
Now that I have concluded the formal portion of this decision, I have some comments I wish to make.
Regina Lane, I urge you, I beg you, please read and re-read this decision until you understand it. Unless you take the time to understand it, and then follow it, your life could change drastically. And whether or not those drastic changes take place is completely within your own control.
Please sit down with Attorney Parley and Attorney Kelley, and your parents, and discuss the changes you and your parents must make in order to maintain your current roles with the children.
Unless you understand this decision, and follow it carefully and sincerely, you could lose the relationship you now have with your children. Please do not allow that to happen. Remember, it CT Page 7541 is all within your control.
Kenneth Lane, I know you are disappointed. I'm sorry. But I do not think you are ready yet. You can be. Hang in there. Keep pushing. Be involved in your children's lives.
I do not know if Regina Lane and her family can change. If they do not change, you are likely to get the modification of custody you seek. If Regina Lane and all three children are not in regular counseling, if the children are not with you as I have directed, if Regina, her parents and the children do not treat you and your family with proper respect, you are likely to become the children's legal and physical guardian.
If they do change, everyone wins.
Hang in there. Keep pushing. Be involved in your children's lives.
Be patient. I think six months is a reasonable period of time to give Regina Lane and her family a fair chance to show good faith, to show real change, to show a new attitude.
The new Guardian Ad Litem and the counseling should become a powerful force for observable change. If that does not happen, the Guardian Ad Litem should become a powerful force to change custody.
So, hang in there. Keep pushing. Be involved in your children's lives.
JLS